# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Maersk Line Limited, Inc. ) ASBCA No. 58779
)
Under Contract No. HTC-711-09-D-0040 )

APPEARANCES FOR THE APPELLANT: Elizabeth A. Ferrell, Esq.
John W. Sorrenti, Esq.
McKenna Long & Aldridge LLP
Washington, DC

Of Counsel:
Michael A. Hopkins, Esq.
General Counsel
Patrick H. McCaffery, Esq.
Associate General Counsel

APPEARANCES FOR THE GOVERNMENT: Col Robert J. Preston II, USAF
Air Force Chief Trial Attorney
Christopher S. Cole, Esq.
Maj Donald N. Bugg, USAF
Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE PEACOCK ON GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The government asserts that the captioned appeal involves a dispute for resolution by the General Services Administration (GSA) pursuant to its authority under section 322 of the Transportation Act of 1940 (Transportation Act), 31 U.S.C. § 3726. The government therefore moves to dismiss this appeal, arguing that the Board lacks jurisdiction under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, to consider matters arising under the Transportation Act. We deny the motion.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The United States Transportation Command (USTRANSCOM or government) and Maersk Line Limited, Inc. (Maersk or appellant) entered into Contract No. HTC-711-09-D-0040 (the contract or the USC-06[1] contract) on 30 January 2009 for the provision of "international cargo transportation and distribution services using ocean common

_____

[1] USC is an abbreviation for Universal Services Contract.

or contract carriers...offering regularly scheduled commercial liner service for requirements that may arise in any part of the world" (R4, tab 1 at 1, 52). The contract was solicited as a commercial item contract pursuant to the Federal Acquisition Regulation (FAR) (compl. and answer ¶ 18).

2. The contract's Performance Work Statement at section 2.A stated that the contract "is not subject to terms or conditions of Contractors' tariffs except for war risk or as otherwise specified in this contract" (R4, tab 1 at 52). Instead, the contract schedule provided that payment was to be made at rates in the Carrier Analysis and Rate Evaluation System (CARES), and various adjustment factors set forth in the contract (*id.* at 3-4, 6-16).

3. The contract was an indefinite delivery/indefinite quantity commercial item contract with an initial base period of 1 April 2009 through 31 March 2010, in the estimated amount of approximately $316 million, and included two one-year option periods (R4, tab 1 at 3-4, 19; compl. and answer ¶¶ 18, 21). Although the contract was "primarily for requirements sponsored by the [Department of Defense]," the contract permitted "[o]ther organizations [to] fill their requirements through this contract only as designated by the Contracting Officer" (R4, tab 1 at 52).[2]

4. The contract incorporated numerous FAR and DFARS clauses by reference or by full text. FAR 52.216-18, ORDERING (OCT 1995), incorporated into the contract by full text, provided in pertinent part: "(b) All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control." (R4, tab 1 at 16-28)

5. The contract also incorporated by reference FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (FEB 2007), which provided in pertinent part:

> (d) *Disputes.* This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613). Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference.

(R4, tab 1 at 16) FAR 12.302(b), applicable to commercial item procurements, prohibits the tailoring of certain paragraphs within FAR 52.212-4 that "implement statutory requirements," including the Disputes paragraph quoted above.

---

[2] Under the present record, it is unclear whether any of the relevant task orders were issued by non-Department of Defense agencies.

6. FAR 52.233-1, DISPUTES (JUL 2002), incorporated into the contract by reference by virtue of FAR 52.212-4(d), similarly provided in pertinent part:

> (a) This contract is subject to the Contract Disputes Act of 1978, as amended....
>
> (b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.

7. The contract further incorporated by reference DFARS 252.233-7001, CHOICE OF LAW (OVERSEAS) (JUN 1997), which provided in pertinent part:

> By the execution of this contract, the Contractor expressly agrees...to accept the exclusive jurisdiction of the United Stated Armed Services Board of Contract Appeals and the United States Court of Federal Claims for hearing and determination of any and all disputes that may arise under the Disputes clause of this contract.

(R4, tab 1 at 17)

8. The contract also included, by full text, FAR 52.212-5, CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS – COMMERCIAL ITEMS (JUN 2008) (DEVIATION). Paragraphs (a)(1) and (a)(2) of the clause provided the Comptroller General, or an authorized representative, the right to examine "directly pertinent records involving transactions related to" the contract until three years after final payment under the contract. (R4, tab 1 at 17)

9. On 24 April 2012, USTRANSCOM notified Maersk that GSA intended to conduct post-payment audits of the invoices submitted under the contract (compl. and answer ¶ 3).

10. As a result of its audit, GSA issued numerous Notices of Overcharge to Maersk, alleging that Maersk overcharged the government for services provided under the contract (compl. and answer ¶ 4). Each overcharge notice stated that the "OVERCHARGE AMOUNT SHOULD BE PROMPTLY REFUNDED OR EVIDENCE FURNISHED TO SUPPORT CHARGES ORIGINALLY PAID; OTHERWISE, COLLECTION ACTION MUST BE INITIATED PURSUANT TO 31 U.S.C. 3726." The Notices of Overcharge directed Maersk to "MAKE CHECK PAYABLE TO 'GENERAL SERVICES ADMINISTRATION.'" The Notices of Overcharge further stated that GSA was assessing interest under the Debt Collection Act of 1982, unless

3

"THE GBL [Government Bill of Lading] OR THE GTR [Government Transportation Request] CONTAINS A CONTRACT PROVISION RELATING TO THE ASSESSMENT OF INTEREST," in which case interest would be "CHARGED UNDER THE CONTRACT TERMS." Lastly, the Notices of Overcharge directed Maersk to send any protest of the overcharge notices to GSA. (R4, tabs 2-13)

11. In response to the Notices of Overcharge, Maersk submitted a "request for a contracting officer's decision, concerning the legal and contractual legitimacy of the [GSA's] Notice of Overcharge claims" to the USTRANSCOM contracting officer (CO), by letter dated 20 March 2013. Maersk sought a decision "confirming that the[] GSA Notices are not authorized determinations of contract debts, demands for payment, or Government contract claims." After discussing the Notices of Overcharge, Maersk stated in pertinent part:

> [I]t is our position that, because the USC-06 is a FAR–based contract, only a designated contracting officer for USC-06 has the legal authority to identify and demand payment of contract debts, and to issue a final decision regarding such debt if the parties are unable to reach agreement on the existence or amount of the debt in a timely manner. FAR §§ 32.602(a), 32.604(a), 32.605(a). It is also Maersk's position that the calculation of interest on contract debts under USC-06 is governed by FAR § 32.604(b). In addition, Maersk concurs with the ASBCA's holding[3] "that the CDA governs the resolution of disputes relating to FAR-based transportation contracts" like USC-06, including disputes relating to alleged contract debts. Maersk's position is based on the plain language of the CDA, relevant FAR provisions, the terms of USC-06, as well as binding ASBCA precedent.
>
> ....
>
> Determination of contract debts, demands for payment and contract claims under FAR-based transportation contracts are the stated responsibility of the contracting officer. Any disputes regarding this determination and demand for payment are subject to the dispute resolution procedures in the USC-06 as governed by the CDA. Because GSA's Notice of Overpayment (and the protest procedures included therein) is not consistent or compatible with the provisions of the

---

[3] Maersk refers to this Board's decision in *Maersk Line, Ltd.*, ASBCA No. 55391, 07-2 BCA ¶ 33,621.

4

CDA, FAR or the USC-06, we request a contracting officer's final decision on the claim below.

*Request for Contracting Officer Final Decision*

...Maersk hereby requests a timely contracting officer's final decision under FAR 33.211 confirming that the GSA Notices of Overcharge are not authorized determinations of contract debts, demands for payment, or Government contract claims under the USC-06 contract, specifically:

1. Confirming that GSA's Notice of Overcharge does not comply with the requirements for a "demand for payment" and contract "debts" under FAR 52.212-4 and Subpart 32.6.

2. Confirming that GSA's Notice of Overcharge, including the Notice's requirement for "payment or protest," is not consistent with FAR 52.212-4(d).

3. Confirming that GSA Transportation Audit Division's assertion of a right to address Maersk "protests" of Notices of Overpayment under the authority of the Transportation Act (31 U.S.C. § 3726) is not consistent with FAR 52.233-1(b).

4. Confirming that there is no basis under any USC-06 contract terms or FAR/DFARS provisions for GSA Transportation Audit Division to assert right to payment, collection and adjudication of Maersk "protests" of Notices of Overpayment under the authority of the Transportation Act (31 U.S.C. § 3726).

Maersk concluded by stating that the "claim addresses contract interpretation issues only, and do [sic] not address the monetary amount(s) which are the subject of GSA's overpayment claims," and requesting a final decision within 60 days. (App. supp. R4, tab 35)

12. USTRANSCOM CO William R. Lindquist issued a "Contracting Officer's Final Decision [dated 24 April 2013] on General Services Administration's Notice of Overcharge Claims Submitted to Maersk for Shipments Under Contract HTC-711-09-D-0040." The CO stated that "[t]he Contracting Officer took no action to collect overpayments owed to the

Government due to the GSA post-payment audits and the Notices of Overcharges are not the result of any Contracting Officer action." Citing FAR 33.210 as authority for addressing claims "for penalties or forfeitures prescribed by statute or regulation that another Federal agency is specifically authorized to administer, settle, or determine," the CO considered that he "lack[ed] the authority to decide or resolve GSA Notices of Overcharge submitted to Maersk for shipments under USC-06." (App. supp. R4, tab 36)

13. By Notice of Appeal dated 17 July 2013, Maersk timely appealed to the Board from the CO's 24 April 2013 final decision. In its Notice of Appeal, Maersk stated that its appeal raised a jurisdictional issue of "whether Government claims for overcharges arising under a FAR-based contract for transportation services are governed by the Transportation Act or the CDA." The Board docketed the appeal as ASBCA No. 58779.

## DECISION

The government maintains that the proper means of resolving the present dispute lies under the dispute resolution procedures prescribed by the Transportation Act and its implementing regulations, and not under the CDA (gov't mot. at 4-5; gov't reply br. at 1). In its motion, the government concedes that the contract at issue is a FAR-based transportation services contract covered by the CDA. Nonetheless, it contends that disputes concerning contractual payments for transportation services are governed by the Transportation Act and the GSA disputes process. Appellant contends that its request for a contracting officer's final decision was a proper CDA claim seeking the interpretation of contract terms over which the Board has jurisdiction pursuant to the CDA (app. opp'n at 6-9). The government's motion raises two primary questions: whether the CDA or Transportation Act's dispute resolution procedures applies, and whether appellant's 20 March 2013 request for a contracting officer's final decision constitutes a proper claim under the CDA.

## Applicability of the CDA

The Transportation Act of 1940, in addition to adopting the short title "Interstate Commerce Act" (ICA) and making major revisions to the structure of the ICA, contains Title III, Miscellaneous, Part II, Rates on Government Traffic. Pub. L. No. 785, §§ 321, 322, 54 Stat. 898, 954-55. Under the ICA, a carrier is required to publish tariffs, and a carrier violates the ICA if it charges a rate different than its published tariffs. 49 U.S.C. § 13702. Section 322 of the Transportation Act (codified as amended at 31 U.S.C. § 3726) authorizes GSA to conduct "pre- or post-payment audits of transportation bills of any Federal agency." 31 U.S.C. § 3726(b). Section 322 further establishes administrative dispute resolution procedures for disputes concerning transportation

6

claims between a carrier and an agency.[4]  A carrier may seek further review by the Civilian Board of Contract Appeals or the United States Court of Federal Claims. 31 U.S.C. § 3726(i)(1); 41 C.F.R. § 102-118.650.

In contrast to section 322's dispute resolution procedures, the CDA grants this Board jurisdiction over claims arising under or relating to contracts made by the Department of Defense, the military departments, or the National Aeronautics and Space Administration for, *inter alia*, the procurement of services.  41 U.S.C. §§ 7101-7109.

---

[4] The Section states in pertinent part:

> (c)(1) The Administrator shall adjudicate transportation claims which cannot be resolved by the agency procuring the transportation services, or the carrier or freight-forwarder presenting the bill.
>
> (2) A claim under this section shall be allowed only if it is received by the Administrator not later than 3 years (excluding time of war) after the later of the following dates:
>> (A) The date of accrual of the claim.
>> (B) The date payment for the transportation is made.
>> (C) The date a refund for an overpayment for the transportation is made.
>> (D) The date a deduction under subsection (d) of this section is made.
>
> (d) Not later than 3 years (excluding time of war) after the time a bill is paid, the Government may deduct from an amount subsequently due a carrier or freight forwarder an amount paid on the bill that was greater than the rate allowed under –
>> (1) a lawful tariff under title 49 or on file with the Secretary of Transportation with respect to foreign air transportation (as defined in section 40102(a) of title 49), the Federal Maritime Commission, or a State transportation authority;
>> (2) a lawfully quoted rate subject to the jurisdiction of the Surface Transportation Board; or
>> (3) sections 10721, 13712, and 15504 of title 49 or an equivalent arrangement or an exemption.

31 U.S.C. § 3726.

7

In *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014 (Fed. Cir. 1995), the Federal Circuit addressed whether the CDA applied where a Government Bill of Lading (GBL) serves as the contract between the parties. The Federal Circuit determined that Sherwood Van Lines had provided transportation services to the Navy under the Transportation Act. The court held that the dispute resolution procedures established by the Transportation Act, 31 U.S.C. § 3726, governed, not the CDA. *Id.* at 1018-20. In reaching its conclusion, the court stated that "Congress did not intend the general provisions of the [CDA] to supplant the pre-existing system of administrative review specifically designed for transportation services subject to Section 3726." *Id.* at 1018. The Federal Circuit further concluded that such simple, individual GBL-based "spot movements" are better suited to section 3726's informal procedures than the more formal CDA procedures, emphasizing that bills of lading are explicitly exempted from the FAR. *Id.* at 1019 (citing FAR 47.000(a)(2), 47.200(b)(2)). The court, however, limited its decision to "cases in which the government obtains transportation services from a common carrier pursuant to 49 U.S.C. § 10721[5] and in which the GBL constitutes the contract between the parties," reserving the question of the applicability of the CDA to claims relating to long-term transportation contracts. *Id.* at 1020.

The Federal Circuit addressed whether the CDA applied to claims arising from long-term contracts in *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357 (Fed. Cir. 2002). Inter-Coastal sought to recover holdover charges under three separate three-year tender agreements with the Defense Logistics Agency. *Id.* at 1359-60. Each tender agreement stated that Inter-Coastal was providing transportation services "pursuant to Section 10721 of the Interstate Commerce Act, or other appropriate regulatory authority." *Id.* at 1360. After availing itself of the dispute resolution procedures in 31 U.S.C. § 3726, Inter-Coastal brought suit in the Court of Federal Claims, which dismissed most of Inter-Coastal's claims because it had failed to file suit within the three-year filing period prescribed by the ICA, 49 U.S.C. § 14705. *Id.* at 1361-65. On appeal, Inter-Coastal argued that the CDA, not the ICA, governed its suit to recover the holdover charges. *Id.* at 1365.

The Federal Circuit affirmed, holding that the ICA "govern[s] disputes concerning contracts for transportation services with the government." *Id.* at 1366. The Federal Circuit observed that 49 U.S.C. § 14705 "draws no distinction between transportation services governed by a Government Bill of Lading on the one hand and a long-term contract on the other." *Id.* With regard to 31 U.S.C. § 3726, the court stated that "[i]t too makes no distinction based on the number of deliveries, the complexity of the transportation agreement, whether an agreement resulted from the procurement process or instead from a 'spot movement,' or whether a GBL or a tender agreement (or both)

---

[5] Subsequent to the Federal Circuit's decision in *Sherwood Van Lines*, Congress passed the ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, which recodified section 10721 at 49 U.S.C. §§ 10721, 13712.

formed the parties' contract." *Id.* at 1367. The court found it instructive that section 3726's implementing regulations indicate "that the ICA administrative procedures apply equally to transportation-services contracts formed by a GBL or by a tender agreement, as well as other forms of contracts." *Id.* at 1368.

In contrast, the FAR applies to the acquisition of "transportation or transportation-related services by contract methods other than bills of lading, transportation requests, transportation warrants, and similar transportation forms." FAR 47.000(a)(2). In this regard, the FAR notes that "transportation services can be obtained by acquisition subject to the FAR or by acquisition under 49 U.S.C. 10721 or 49 U.S.C. 13712." *Id.* The Defense Transportation Regulation (DTR) similarly recognizes that the Department of Defense "uses a number of different procurement instruments" to acquire transportation services, including "FAR contracts, Bills of Lading (BLs), government transportation requests, and similar transportation forms." DTR 4500.9-R, Part II, ch. 201, ¶ L.12 (citations omitted). Although the DTR instructs that payment disputes under non-FAR-based contracts are governed by 31 U.S.C. § 3726 and its implementing regulations, with regard to FAR-based contracts the DTR provides that "Protests and Disputes are governed by 48 CFR 33 [FAR Part 33]." *Id.* ¶¶ N.1.b, N.5.

In light of these regulations, we have held that "*Inter-Coastal* merely extended the *Sherwood Van Lines* holding, *i.e.*, spot movement of property by a common carrier using a GBL to long-term (three-year) tender agreements," noting that in both cases the carrier had provided transportation services pursuant to the Transportation Act. *Maersk*, 07-2 BCA ¶ 33,621 at 166,525. We have further determined that, as part of the Transportation Act, "the administrative dispute resolution procedure in 31 U.S.C. § 3726…applies when transportation services are provided under that Act (49 U.S.C. §§ 10721, 13712)." *Eimskipafeleg Island, ehf*, ASBCA No. 55209, 07-2 BCA ¶ 33,620 at 166,518. Therefore, as the Board held in *Maersk*, "the CDA governs resolution of disputes relating to FAR-based transportation contracts, and 31 U.S.C. § 3726 governs resolution of claims relating to Transportation Act non-FAR-based contracts." 07-2 BCA ¶ 33,621 at 166,526.

In both *Eimskipafeleg* and *Maersk*, we found that the contracts were not entered into pursuant to the Transportation Act, but rather, pursuant to the FAR. *Eimskipafeleg*, 07-2 BCA ¶ 33,620 at 166,518; *Maersk*, 07-2 BCA ¶ 33,621 at 166,525. Both *Eimskipafeleg* and *Maersk* involved contractor claims under FAR-based commercial item contracts for transportation services. *Eimskipafeleg*, 07-2 BCA ¶ 33,620 at 166,518; *Maersk*, 07-2 BCA ¶ 33,621 at 166,521. The contracts at issue in each case included FAR 52.212-4 and FAR 52.233-1, which specified that the contracts were subject to the CDA. *Eimskipafeleg*, 07-2 BCA ¶ 33,620 at 166,514; *Maersk*, 07-2 BCA ¶ 33,621 at 166,521-22. Accordingly, we determined, in each case, that the Transportation Act's dispute resolution procedures did not apply. *Eimskipafeleg*, 07-2 BCA ¶ 33,620 at 166,519 ("We conclude that the Transportation Act administrative dispute resolution procedure in 31 U.S.C. § 3726 is inapplicable."); *Maersk*, 07-2 BCA ¶ 33,621 at 166,526 ("[The] dispute resolution procedures set out in 31 U.S.C. § 3726 and its implementing

9

regulations have no application to the two FAR-based contracts involved in this appeal."). We therefore held that the Board had jurisdiction over each appeal pursuant to the CDA. *Eimskipafeleg*, 07-2 BCA ¶ 33,620 at 166,519; *Maersk*, 07-2 BCA ¶ 33,621 at 166,526.

Maersk asserts that the USC-06 contract is a commercial item FAR-based contract for transportation services subject to the CDA (app. opp'n at 3-4). The government does not dispute that the USC-06 contract is a FAR-based contract (gov't mot. at 1-2; gov't reply br. at 1). The government solicited the USC-06 contract pursuant to the FAR (SOF ¶ 1). The USC-06 contract included numerous FAR clauses, which are routinely considered and analyzed by the Board, including FAR 52.212-4 and FAR 52.233-1, which specify that the USC-06 contract is subject to the CDA (SOF ¶¶ 5-6). The contract prescribed its own, discrete contractual rate schedule (CARES) and expressly stated that the contractor's extant tariffs were not applicable (SOF ¶ 2). We therefore conclude that disputes arising under or relating to the FAR-based USC-06 contract are governed by the CDA.

In his final decision, the CO took the position that he lacked authority by virtue of FAR 33.210 to resolve the overpayments dispute (gov't mot. at 3; gov't reply br. at 1). FAR 33.210 states, in pertinent part, that a contracting officer's "authority to decide or resolve claims does not extend to – (a) A claim or dispute for penalties or forfeitures prescribed by statute or regulation that another Federal agency is specifically authorized to administer, settle, or determine." FAR 33.210(a) derives from 41 U.S.C. § 7103(a)(5), which excludes such "claim[s] or dispute[s] for penalties or forfeitures" from claims under the CDA. There is no basis to suggest that these payments are anything other than routine. The GSA's Notices of Overcharge simply do not fall within the section 7103(a)(5) exclusion. As we noted in *Midwest Window Systems, Inc.*, ASBCA No. 25035, 82-2 BCA ¶ 16,055 at 79,654 (citations omitted) the CDA's legislative history is "silent as to what Congress meant by 'penalties and forfeitures.'" However, 31 U.S.C. § 3726, titled "Payment for transportation," does not use either term.[6] Nor is the collection of alleged overpayments a "penalty" or a "forfeiture" within the common meaning of those terms. *See* BLACK'S LAW DICTIONARY 661, 1153-54 (7th ed. 1999). In any event, the government's motion does not argue or rely on the "penalties or forfeiture" exception to CO authority.

### Whether Appellant Submitted a Valid CDA Claim

Submission of a claim to the contracting officer and a decision on, or deemed denial of, the claim are prerequisites to the Board's jurisdiction over contractor claims

---

[6] Section 3726(e) describes the collection of overpayments under that section as "refunds." The GSA Notices of Overcharge likewise directed Maersk to refund the alleged overpayments (SOF ¶ 10).

under the CDA. 41 U.S.C. §§ 7103-7104; *Parsons Global Servs., Inc.*, ASBCA No. 56731, 11-1 BCA ¶ 34,632 at 170,653; *Madison Lawrence, Inc.*, ASBCA No. 56551, 09-2 BCA ¶ 34,235 at 169,206. The FAR defines a "claim" as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." FAR 2.101. We interpret the FAR definition of a claim broadly. *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011) ("the broad language of the statute and FAR provision supports a broad reading of the term 'claim'").

The government argues that appellant's 20 March 2013 request for a contracting officer's final decision did not constitute a proper CDA claim (gov't mot. at 3-4). According to the government, this appeal does not concern "a dispute over the contract itself" (*id.* at 4). Instead, the government characterizes the 20 March 2013 request as "purely a challenge to the authority of a Federal agency under a statute over which the Board lacks subject-matter jurisdiction" (*id.*).

The government misconstrues appellant's 20 March 2013 request for a contracting officer's final decision. Contrary to the government's assertion, appellant did not seek "a declaration of rights with regard to the GSA's authority pursuant to the Transportation Act" (gov't reply br. at 1). The crux of Maersk's request was its assertion that the GSA overcharge notices are "not consistent or compatible with the provisions of the CDA, FAR or the USC-06 [contract]." Although Maersk noted that the GSA acted under the authority of the Transportation Act in issuing its Notices of Overcharge at numerous points in its 20 March 2013 request, Maersk sought a contracting officer's final decision regarding the effect of those notices under the terms of the USC-06 contract and relevant regulatory and statutory provisions. (SOF ¶ 11) We conclude that Maersk's 20 March 2013 request for a contracting officer's final decision is a claim seeking the contracting officer's interpretation of the contract terms and relevant FAR and CDA provisions with regard to the GSA overcharge notices. That claim arose under and is related to the contract.

The Board's jurisdiction over contract interpretation claims seeking declaratory relief is well settled. *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1265-67, *reh'g denied*, 186 F.3d 1379 (Fed. Cir. 1999); *Versar, Inc.*, ASBCA No. 56857, 10-1 BCA ¶ 34,437 at 169,958; *Donald M. Lake, d/b/a Shady Cove Resort & Marina*, ASBCA No. 54422, 05-1 BCA ¶ 32,920 at 163,071-72; *Martin Marietta Corp.*, ASBCA No. 38920, 90-1 BCA ¶ 22,418 at 112,609. We have long held that a contract interpretation claim may include a request for a decision as to the correctness of actions taken under the contract in light of the clause and associated regulations. *Colonna's Shipyard, Inc.*, ASBCA No. 56940, 10-2 BCA ¶ 34,494 at 170,140; [HMR]*TECH2, LLC*, ASBCA No. 56829, 09-2 BCA ¶ 34,287 at 169,373; *TRW, Inc.*, ASBCA Nos. 51172, 51530, 99-2 BCA ¶ 30,407 at 150,331.

11

That the actions of the GSA, and not the USTRANSCOM, underlie appellant's claim does not alter our conclusion. *See Raytheon Missile Sys. Co.*, ASBCA No. 57594, 13 BCA ¶ 35,264 at 173,111 (rejecting the government's argument that the Board lacked jurisdiction over a contractor's claim relating to the actions of an agency other than the contracting agency). We need not decide whether the actions taken by the GSA were authorized by the Transportation Act (*see* gov't mot. 3-5). The issue before the Board is the effect of those actions on the rights and obligations of the parties under the terms of the contract. Viewed in this light, this appeal falls squarely within the Board's CDA jurisdiction. *See, e.g., Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1580 (Fed. Cir. 1993); *Pub. Warehousing Co. K.S.C.*, ASBCA No. 58078, 13 BCA ¶ 35,460 at 173,897 ("The Board does have jurisdiction under the CDA to decide the contract rights of the parties even when fraud has been alleged."); *Overstreet Elec. Co.*, ASBCA Nos. 51653, 51715, 00-2 BCA ¶ 31,038 at 153,271 ("[T]he Board has jurisdiction over disputes which are centered upon the parties' contract rights and obligations, even though matters reserved to [the Department of Labor] may be part of the factual predicate.").

We note that the Board has consistently "rejected attempts to cloak a monetary claim as a request for contract interpretation." *Eaton Contract Servs., Inc.*, ASBCA No. 52888 *et al.*, 02-2 BCA ¶ 32,023 at 158,268; *see also Weststar Eng'g, Inc.*, ASBCA No. 52484, 02-1 BCA ¶ 31,759 at 156,851. However, the crux of the underlying dispute in this case involves a government claim, albeit one that has not at this juncture been formally asserted by the contracting officer. Under the CDA, government claims must be the subject of a contracting officer's final decision. 41 U.S.C. § 7103(a)(3). In its request for a final decision, Maersk took the position that the GSA Notices of Overcharge failed to constitute proper government claims (SOF ¶ 11). Under these circumstances, we do not consider that speculative quantification of a "sum certain" and certification by the contractor of the amounts the GSA considers to be "overcharges" is required. Although "conversion" of the potential government claim into a contractor claim may be permissible, it is not required for us to assume jurisdiction over the contractor's request for interpretation of the contract.[7] In comparable circumstances, we have found jurisdiction, stating that what the contractor needed was "the COs' interpretations of the clauses…whether it be the conclusion that no government claim should be asserted, or the issuance of COs' decisions asserting government claims." *Linc Gov't Servs., LLC*,

---

[7] Nonetheless, we note that appellant subsequently opted to do so in this instance. As appellant notes in its opposition, "[s]ubsequent to Maersk's submission of its claim for interpretation of contract terms in March 2013, the GSA began the recoupment of the alleged overcharges by offset against payments due Maersk." Maersk submitted to the USTRANSCOM CO a 5 June 2013 claim in the amount of $298,654.54 regarding the GSA's administrative offsets. The CO denied the claim in a 31 July 2013 final decision. (App. opp'n at 5 n.2.) Maersk's timely appealed that final decision, which the Board docketed as ASBCA No. 58844.

ASBCA No. 58561 *et al.*, 14-1 BCA ¶ 35,473 at 173,934. In *Linc*, the Defense Finance and Accounting Service (DFAS), pursuant to a Memorandum of Agreement between DFAS and the Army, issued letters to the contractor asserting liability for alleged unpaid medical services. *Id.* at 173,932-33. In response, the contractor submitted letters to the COs of its various affected contracts denying liability, contending that it was responsible for such medical costs only in certain circumstances, and stating that there was insufficient evidence demonstrating liability. *Id.* at 173,932. In finding jurisdiction, we determined that contractor's letters to the COs were claims seeking "the COs' interpretations of the terms of the contracts under which the alleged liability for medical costs is asserted." *Id.* at 173,934. Similarly, Maersk here requests the CO's determination regarding appellant's liability under the contract for the alleged overpayments claimed by GSA in its Notices of Overcharges.

## CONCLUSION

We conclude that the claim and dispute under the referenced FAR-based contract are within our jurisdiction to resolve under the CDA. The government's motion to dismiss is denied.

Dated: 23 April 2014

ROBERT T. PEACOCK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58779, Appeal of Maersk Line Limited, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals